TICOR TITLE INS. CO.,

        Plaintiff,

v.

                            Case No. 05-CV-73709-DT

NATIONAL ABSTRACT AGENCY, INC.,
EDWARD HARRIS and CITY TITLE
AGENCY, INC.,

        Defendants,

and

CITY TITLE AGENCY, INC.

        Cross-Claimant,

v.

NATIONAL ABSTRACT AGENCY, INC.
and EDWARD HARRIS,

        Cross-Defendants,

and

NATIONAL ABSTRACT AGENCY, INC.
and EDWARD HARRIS,

        Cross-Claimants,

v.

CITY TITLE AGENCY, INC.

        Cross-Defendant,

_____/

**OPINION AND ORDER (1) GRANTING TICOR'S "MOTION FOR PARTIAL SUMMARY JUDGMENT," (2) GRANTING NATIONAL AND HARRIS'S "MOTION TO DISMISS COUNTS IV AND VI" OF TICOR'S COMPLAINT AND/OR FOR "PARTIAL SUMMARY JUDGMENT," (3) GRANTING NATIONAL AND HARRIS'S "MOTION FOR SUMMARY JUDGMENT OF UNJUST ENRICHMENT CLAIM" AND (4) GRANTING IN PART AND DENYING IN PART NATIONAL AND HARRIS'S "MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT" OF CITY TITLE'S CROSS-COMPLAINT**

Pending before the court are the following four motions filed on June 29, 2007:

(1) Plaintiff Ticor Title Insurance Co.'s ("Ticor's") "Motion for Partial Summary Judgment," (2) Defendant-Counter-Claimaint National Abstract Agency, Inc.'s ("National's") and Defendant-Counter-Claimaint Edward Harris's ("Harris's") "Motion to Dismiss Counts IV and VI" of Ticor's Complaint and/or for "Partial Summary Judgment," (3) National and Harris's "Motion for Summary Judgment of Unjust Enrichment Claim" against Defendant-Counter-Claimaint City Title Agency, Inc. ("City Title") and (4) National and Harris's "Motion to Dismiss and/or for Summary Judgment" of City Title's cross-complaint. The motions have been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will (1) grant Ticor's "Motion for Partial Summary Judgment," (2) grant National and Harris's "Motion to Dismiss Counts IV and VI" of Ticor's Complaint and/or for "Partial Summary Judgment," (3) grant National and Harris's "Motion for Summary Judgment of Unjust Enrichment Claim" and (4) grant in part and deny in part National and Harris's "Motion to Dismiss and/or for Summary Judgment" of City Title's cross-complaint.

# I. BACKGROUND

This action arises from National's undisputedly improper transfer of $275,000 that had been entrusted by Ticor to National into the escrow account of a different title insurance agency.

Ticor is in the business of providing title insurance services of the kind routinely utilized in real estate transactions. (Ticor's Mot. at 1.) To provide such services, Ticor contracts with title insurance agencies, like National, to issue insurance policies approved by Ticor. (*Id.*) On May 17, 2005, Ticor and National entered into an "Issuing Agency Contract," whereby National was appointed to act as Ticor's agent in issuing title insurance commitments, policies, endorsements and other title assurances approved by Ticor. (Contract at ¶ 1, Ticor's App. Ex. 1.) Harris, who is National's president and sole owner, signed the contract on behalf of National and also signed a personal guarantee for National's obligations. (*Id.*; Harris's 5/23/07 Dep. at 21, Ticor's App. Ex. 2.)

Before National began its operations in June 2005, Harris was involved with the operations of another title insurance agency, City Title. (Harris's 5/23/07 Dep. at 12-13, Ticor's App. 2.) City Title was formed in January 2005 by Victor Fuciarelli, who became its vice-president. (Fuciarelli's Dep. at 29, Nat'l and Harris's Mot. to Dismiss, Ex. B.) Fuciarelli formed National Abstract in an attempt to remain in the title business after City Title's underwriter notified him that it was canceling the contract because City Title had too many claims. (*Id.* at 81.) Thereafter, Ticor agreed to serve as the underwriter for National, but insisted that Fuciarelli not have any ownership interest in National given his history of claims at City Title. (Id. at 41-42.) Consequently, ownership of National

3

was transferred to Harris as sole owner, and Ticor became National's underwriter. (Harris's 2/20/06 Dep. at 36, Nat'l and Harris's Mot. to Dismiss, Ex. A.)

Fuciarelli had known Harris since the 1980s, and the two had worked together at other title insurance agencies.  (Harris's 5/23/07 Dep. at 5-6, Ticor's App. Ex. 2; Fuciarelli's Dep. at 76, Ticor's App. Ex. 4.)  Although Harris was never an owner or officer of City Title, he did have a relationship with it, the exact nature of which is in dispute.[1]  When National began operations in June 2005, City Title was winding up its operations with the same secretary, Suzanne Forget, serving both entities.  (Forget's Dep. at 30, 42, Ticor's App. Ex. 5.)[2]  In addition to sharing secretarial services, National and City Title also shared the same office (within a building that Harris owned), had the same phone number and maintained escrow accounts at Lakeside Community Bank. Further, National hired all of its employees from City Title, and Harris shared accounting responsibilities for City Title's Clinton Township branch.  Harris also performed closings for City Title and had check signing authority for City Title's escrow account.  (Harris's

---

[1]National and Harris assert that Harris "was never an owner, officer, operator, member or employee of City Title and never received a W2 or 1099 from City Title." (Nat'l and Harris's Resp. to Ticor's Mot. at 4.)

[2]Regarding her transition from City Title to National, Forget testified that an announcement was made at City Title that "we are no longer going to be City Title, the name is changing.  Mr. Harris will be in charge of the company . . . ." (*Id.* at 29.)  Forget indicated that her position at National was the same as the position she held at City Title, her office was the same, her desk was the same and her computer was the same. (*Id.* at 30.)

5/23/07 Dep. at 12, 15, Ticor's App. 2; Fuciarelli's Dep. at 50, Ticor's App. Ex. 40; Forget's Dep. at 30-31, 81, Ticor's App. Ex. 5; Krzesenski's Dep. at 10, Ticor's App. Ex. 6.)

Pursuant to the contract between Ticor and National, National was required to keep safe and segregated in an escrow account all monies entrusted to it by Ticor or others in the course of its title issuing operations.  (Contract at §§ 4.G, 8, Ticor's App. Ex. 1.)  In that regard, National established an escrow account at Lakeside Community Bank in Sterling Heights, Michigan.  (Harris's 2/20/06 Dep. at 64-65, Ticor's App. Ex. 3; Krzesenski's Dep. at 9, Ticor's App. Ex. 6. )

On June 23, 2005, Forget received a telephone call from bank representative Kim Krzesenski, informing her that there was a shortage in City Title's escrow account.  (Forget's Dep. at 38, Ticor's App. Ex. 5.)  Forget called Harris, who was already en route to the bank on a different matter.  (*Id.*)  Upon arrival at the bank, Harris spoke with Krzesenski, who confirmed that the City Title escrow account was short $269,575.  (Krzesenski's Dep. at 24, Ticor's App. Ex. 6.)  To remedy the shortage, Harris wrote two checks, one in the amount of $240,000, the other in the amount of $35,000, from National Abstract's escrow account payable to the bank, for the purpose of covering City Title's shortages.  (Harris's 2/20/06 Dep. at 101-102, Ticor's App. Ex. 3.)  After the checks were deposited into City Title's account, City's outstanding debts were paid, leaving it with a positive balance of $5,424.82.  (Krzsenski Aff., Nat'l and Harris's Resp. to Ticor's Mot. For S.J., Ex. 8.)

 Harris testified that he transferred the funds to City Title because he was under the mistaken impression that City Title was entitled to the funds.  (Harris's 2/20/06 Dep.

at 80, Ticor's App. Ex. 80.)  Harris maintains that when Forget called him to tell him of the shortage, she indicated that City Title's escrow account was short because funds that should have been deposited into its account were deposited into National's account by mistake, and that the funds had to go back into City Title's account.[3]  *(Id.)*  Forget first testified that, at least during their initial phone call, she did not tell Harris that money meant for City Title's account had been mistakenly deposited into National's account; she told him only that there was a shortage in City Title's account.  (Forget's Dep. at 41, Ticor's App. Ex. 5.)  Later in her deposition, Forget testified that she did explain to Harris over the phone that she believed that funds were mistakenly put into National's account when they should have been put into City Title's account.[4]  (*Id.* at 53.)  Forget's stated belief, she testified, stemmed from having deposited a certain check intended for City Title's account into National's account.[5]  (*Id.* at 43-45.)

In early September 2005, approximately ten weeks after the transfer of funds, Harris notified Ticor that National's escrow account was missing funds. (Harris's 2/20/06

---

[3]When asked why he cared whether City Title's escrow account was short, Harris responded, "[y]ou're right, I shouldn't have cared."  (Harris's 2/20/06 Dep. at 80, Ticor's App. Ex. 3.)

[4]Forget did note that, from time to time, mistakes would be made such that a check that was supposed to have been deposited into National's account would be deposited into City Title's account by mistake, and vice versa.  (*Id.* at 77-79.)

[5]When Krzesenski called Forget to tell her of City Title's shortage, she did not represent that the shortage was due to funds being mistakenly deposited into National's escrow account when they should have been deposited in City Title's, nor did she suggest that funds should be transferred from National's escrow account to City Title's escrow account in order to cover the shortage; Krzesenski indicated only that there was a shortage in City Title's account.  (Forget's Dep. at 40, Ticor's App. Ex. 5; Krzesenski's Dep. at 22-23, Ticor's App. Ex. 6.)

Dep. at 94, Ticor's App. Ex. 3.)  Harris testified that, prior to that point, he was unaware

that City Title was not actually entitled to the funds and that his transfer was a mistake.

(*Id.*)  On September 16, 2005, Ticor terminated its agreement with National, citing

missing escrow funds.[6]  (9/16/05 Ticor Letter, Ticor's App. Ex. 7.)  Since discovering

that City Title was never entitled to the funds, Harris stated that he has asked Fuciarelli

numerous times to return the escrow funds, but to date the funds have not been

returned.[7]  (Harris's 2/20/06 Dep. at 109, Ticor's App. Ex. 3; Harris's 5/23/07 Dep. at 60-

61, Ticor's App. Ex. 2.)

On September 28, 2005, Ticor filed suit against National, Harris and City Title,

alleging: (1) breach of contract (National), (2) breach of the personal guarantee (Harris),

(3) breach of fiduciary duty (National and Harris), (4) larceny (National and Harris), (5)

larceny by conversion (City Title), (6) embezzlement (National and Harris) and (7) unjust

enrichment (City Title).  (*See generally* Ticor's Compl.)  Ticor amended its complaint on

March 15, 2006 to add a count of negligence against National, Harris and City Title

(Count VIII).  (Ticor's First Am. Compl. at 10.)

On October 25, 2005, City Title filed a cross-complaint against National and

Harris, asserting (1) that it is entitled to indemnity in the event that it is found liable to

---

[6]An audit performed after Ticor terminated its relationship with National revealed that National's escrow account was short approximately $286,000.  (Tschappat's Dep. at 28-29, Ticor's App. Ex. 8.)  The court notes that Tim Tschappat appears to be Ticor's accounting expert.  (*Id.*)

[7]All but $5,424.82 of the $275,000 deposited into City Title's account went to pay City Title's debts and obligations.  (Aff. of Krzesenski, Nat'l and Harris's Mot. to Dismiss, Ex. C.)

Ticor, (2) negligence, (3) fraudulent misrepresentation and (4) breach of fiduciary duty.[8]
(*See* generally City Title's Cross-Compl.)

On November 2, 2005, National and Harris filed a cross-complaint against City Title, alleging (1) unjust enrichment, (2) that National and Harris are entitled to a constructive trust, (3) fraud and misrepresentation, (4) conversion, (5) interference with contract and (6) that National and Harris are entitled to indemnity. (*See generally* Nat'l and Harris's Cross-Compl.)

On June 29, 2007, the parties filed the four motions currently pending before the court.

## II. STANDARD[9]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to

---

[8]Although City Title's cross-complaint leaves something to be desired in the way of clarity, the court has effectively deciphered its four claims. The potential for confusion arises because City Title does not label any of its claims with a heading, only with the count number, and the "wherefore" paragraph concluding each section seeks indemnity. (*See generally* City Title's Cross-Compl.) However, the cross-complaint does allege that Harris was negligent, breached his fiduciary duty, engaged in fraud, and that City Title is entitled to indemnity. (*Id.* at ¶ 8.) Further, City Title enunciates the elements of the offenses it alleges. That City Title did not title its claims, and that it mentions indemnity in each "wherefore" paragraph, although confusing, does not necessitate a finding that City Title did not allege causes of action for indemnity, negligence, fraudulent misrepresentation and breach of fiduciary duty.

[9]In National and Harris's (1) motion to dismiss and/or for partial summary judgment on Counts IV and VI of Ticor's complaint and (2) motion to dismiss and/or for for summary judgment of City Title's cross-complaint, National and Harris refer to evidence outside of the pleadings. Thus, the motions shall be treated as ones for summary judgment under Federal Rule of Civil Procedure 56(b) and disposed of as provided in Rule 56. *Raimondo v. Village of Armada*, 197 F.Supp.2d 833, 841 (E.D. Mich. 2002). Consequently, all four motions discussed in this opinion will be analyzed under the rubric of Rule 56.

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  They must put forth enough evidence to show that there exists a genuine issue to be decided at trial.  *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256).  Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

#### A. Ticor's "Motion for Partial Summary Judgment" Against National, Harris and City Title

Ticor asserts that it is entitled to summary judgment on its claims of (1) breach of contract against National, (2) breach of personal guarantee against Harris and (3) unjust enrichment against City Title.

#### 1. Breach of Contract by National

Under Michigan law, the essential elements of a breach of contract claim are (1) the existence of a contract between the parties, (2) the terms of the contract, (3) that

defendant breached the contract and (4) that the breach caused the plaintiff injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).

Here, the parties do not dispute the existence of a valid contract that governed their relationship. Pursuant to the contract, National was appointed to act as Ticor's agent solely to issue title insurance commitments, policies, endorsements and other title assurances approved by Ticor. (Contract at ¶ 1, Ticor's App. Ex. 1.) The contract also provided that National was required to keep safe and segregate all monies that were entrusted to it by Ticor or others in the business operations and the issuance of title insurance policies. (*Id.* at §§ 4.G, 8.) Ticor alleges that National breached the contract by failing to properly maintain escrow funds.[10] (Ticor's Mot. at 9.) National "concedes that it erred when it transferred funds" from National's escrow account to City Title's escrow account, but further asserts that its "error does *not* amount to a breach of the Agreement." (Nat'l and Harris's Resp. at 7.)

Paragraph 4.G of the contract provides, in relevant part:

In those instances where Agent closes real estate transactions and receives and disburses funds of others,[11] Agent shall:

---

[10]Ticor's complaint alleges breaches involving not only improper maintenance of escrow funds, but also improper processing of title applications and a failure to reconcile the escrow account on a monthly basis. (Ticor's Compl. at 5, Ticor's App. Ex. 11.) Because Ticor's motion focuses only on the improper maintenance of escrow funds, the court will limit its analysis to that type of alleged breach.

[11]The contract provides that the term "closing" means "the handling and disbursement of settlement funds or the providing of settlement services." (Contract at § 7.H, Ticor's App. Ex. 1.) The court finds that Harris was acting as an agent of National when he transferred the funds, and the transfer was a "disbursement of settlement funds or the providing of settlement services," thus triggering the mandates of 4.G.

. . . .

(iii) disburse such funds only for the purpose for which they were entrusted;
(Contract at § 4.G.iii, Ticor's App. Ex. 1.)  National maintains that it did not breach
provision 4.G.iii because "the mere transfer of funds from Nation Abstract's escrow
account to City Title's escrow account was not a 'disbursement' of funds under that
paragraph."  (Nat'l and Harris's Resp. at 8.)  National points out that the dictionary
definition of "disbursement" includes reference to a "pay out," and argues that "[t]he
transfer of funds from one escrow account to another escrow account does not amount
to a 'pay out' or the making of a payment."  (*Id.*)  This argument is unavailing.  The act
of taking funds from National's account, which funds National was contractually
obligated to safeguard, and transferring them to City Title's account without the
knowledge or authorization of Ticor, can, and in this cases does, constitute a breach of
provision 4.G.iii.  The act of transferring funds out of National's account and placing
them into another agency's escrow account is a "disbursement" as a matter of law, and
is the epitome of a disbursement of funds *not* "for the purposes for which they were
entrusted."  Quite simply put, the funds were not entrusted to National for the purpose of
transferring them to City Title to cover a City Title shortage.  National's dictionary-based
insistence regarding a "pay out" merely obfuscates the issue.  The court thus finds that

Ticor is entitled to summary judgment on its breach of contract claim because there is no genuine issue of material fact that National breached provision 4.G.iii of the contract.[12]

Moreover, although the court finds that there is no genuine issue of material fact that National breached the contract, the court does find an issue of material fact regarding damages. Ticor alleges that it has suffered $210,700 in damages ($124,449 in claims and $86,251 in attorneys' fees) as a result of National's breach. (Ticor's Mot. at 10.) Ticor maintains that third parties turned to it for funds that should have been in National's escrow account but were not because of the improper transfer, resulting in Ticor having to pay multiple third party claims and incur attorneys' fees. (*Id.*) National contests Ticor's figure, alleging that Ticor was not obligated to pay at least a portion of the claims that it paid, that Ticor has overstated its damages and that a portion of the claims at issue were paid by Chicago Title Insurance Company, not Ticor. (Nat'l and

---

[12]In light of the determination that National breached provision 4.G.iii of the contract, National consequently also breached provision 8.D, which provides, in relevant part:

> 8. **LIABILITY OF AGENT.** Agent shall be liable to and agrees to indemnify and to save harmless Principal for all attorneys' fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following:
>
> . . . .
>
> D. Failure of Agent, its officers and employees to comply with the terms of this Contract or with the guidelines, regulations or instructions given to Agent by Principal;

(Contract at § 8.D, Ticor's App. Ex. 1.) The court need not reach the issue of whether National violated additional contract provisions, as alleged in Ticor's complaint.

Harris's Resp. at 11-17.)  Although the court finds that Ticor did suffer damages by having to pay third party claims and incurring attorneys' fees, the court is not persuaded that Ticor presents sufficient *undisputed* evidence to support its damages figure.  An issue of material fact exists regarding the correct calculation of damages suffered by Ticor.

Furthermore, Ticor asserts that it is entitled to reasonable attorneys' fees and costs, pursuant to paragraph 20 of the contract, which provides, in relevant part:

> If a legal action or other proceedings are brought for the enforcement of this Contract, or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this contract, the prevailing party shall be entitled to recover reasonable attorneys' fees, administrative costs and other costs incurred in that action or proceeding in addition to any other relief to which it may be entitled, in the event of a material breach by Agent, Principal shall be entitled to recover all costs and loss associated with resolving the matter giving rise to said material breach.

(Contract at § 20, Ticor's App. Ex. 1.)  Attorneys' fees provisions in contracts are generally upheld by our courts as valid and enforceable.  *Farm Servs. v. JBL Enters.*, 555 N.W.2d 733, 736 (Mich. Ct. App. 1996) ("The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees and such provisions are judicially enforceable.").  Here, Ticor is the prevailing party with respect to the claims raised against National and Harris in its motion for partial summary judgment.  Further, because National's breach is material, Ticor is "entitled to recover all costs and loss associated with resolving the matter giving rise to said material breach." (Contract at § 20, Ticor's App. Ex. 1.)  As detailed below, the court will await further supporting documentation before settling on a particular figure regarding Ticor's damages, including its reasonable attorneys' fees and costs.

14

### 2.  Harris's Liability Pursuant to the Personal Guarantee

The last page of Ticor and National's contract contains a personal guarantee

signed by Harris in his individual capacity.  The guarantee provides:

### PERSONAL GUARANTEE

> In consideration of One Dollar ($1.00) and/or other valuable consideration,
> paid to the undersigned and as further inducement to Principal to enter
> into the foregoing Agency Agreement, each of the undersigned
> acknowledges that (s)he will personally benefit from said Agency Contract,
> and each of the undersigned jointly and severally does hereby personally
> and unconditionally undertake, guarantee and assure the full, prompt and
> complete performance of all the terms, agreements, covenants, conditions
> and undertakings of Agent as set forth in said Agency Contract.
>
> It is further agreed that the liability hereunder is, and shall be, a primary
> and personal undertaking by each of the undersigned and Principal shall
> not be required to exercise its remedies against Agent before enforcing
> this undertaking against the undersigned, or any one of them.

(Personal Guarantee, Ticor's App. Ex. 1.)  Although National and Harris dispute whether

there was a breach of contract and whether Ticor suffered damages as a result of the

alleged breach, there is no dispute that Harris signed the personal guarantee.  Harris

and National concede that "[i]n addition to signing the Agreement for National Abstract,

Edward T. Harris, National Abstract's President, signed a personal guarantee."  (Nat'l

and Harris's Resp. to Ticor's Mot. at 4.)

 Personal guarantees are generally upheld.  See *Dir. of Bureau of Workers'*

*Disability Comp. v. Durant Enter., Inc.*, 491 N.W.2d 584, 585 (Mich. Ct. App. 1992)

(upholding a guarantee where the guarantee language was absolute and unqualified).

Contracts of guarantee are to be construed like other contracts; the intent of the parties,

as collected from the whole instrument, should govern.  *First Nat'l Bank v. Redford*

*Chevrolet Co.*, 258 N.W. 221, 223 (Mich. 1935).  Where the language of the writing is

not ambiguous, the construction is a question of law for the court, on a consideration of the entire instrument. *Id.* When interpreting a contract, including a guarantee, "summary disposition is proper absent any offer of proof giving rise to issues of fact." *Dir. of Bureau of Workers' Disability Comp.,* 491 N.W.2d at 585 (citing *Burroughs Corp. v. Detroit,* 171 N.W.2d 678, 681 (Mich. Ct. App. 1969)).

The document in question bears the title "PERSONAL GUARANTEE" in bold lettering, contains language that is typical of a personal guarantee, expressly states that "each of the undersigned jointly and severally does hereby personally and unconditionally undertake, guarantee and assure the full, prompt and complete performance of all the terms, agreements, covenants, conditions and undertakings of Agent as set forth in said Agency Contract," and bears the signature of Harris in his individual capacity. (Personal Guarantee, Ticor's App. Ex. 1.) The court finds that the personal guarantee is unambiguous and evidences an intent to hold Harris personally liable for National's debts and obligations arising out of the issuing agency contract. There is no evidence, nor do National and Harris present any arguments, to suggest that the guarantee is not a personal guarantee, that the guarantee is somehow invalid, that Harris did not sign it or did not know what he was signing or that the intent of the parties was not to hold Harris personally liable for the debts and obligations of National. Consequently, there is no genuine issue of material fact that the guarantee at issue is, indeed, a personal guarantee and that Harris is personally liable to Ticor for the debts and obligations of National, in accordance with the personal guarantee.

### 3. Unjust Enrichment by City Title

As an initial matter, there was no contract between Ticor and City Title or

National and City Title.  A court may, however, imply a contract in order to prevent

unjust enrichment, as long as there is no express contract covering the same subject

matter.  *PSA Quality Sys. (Toronto), Inc. v. Sutcliffe,* 256 F.Supp.2d 698, 702 (E.D.

Mich. 2003).  To sustain a claim of unjust enrichment, a plaintiff must establish (1) the

receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the

plaintiff because of the retention of the benefit by the defendant.  *Barber v. SMH (US),

Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993).

It is undisputed that Harris transferred $275,000 of Ticor's and/or National's

policyholders' funds from National's escrow account into City Title's escrow account.  It

is also undisputed that the money should not have been transferred to City Title and

that "City Title was never entitled to one cent."  (Harris's 2/20/06 Dep. at 88, Ticor's App.

Ex. 3.)  Though Harris may have asked Fuciarelli, City's vice-president, principal

shareholder and officer, to return the funds, to date, the funds have not been returned.[13]

(Harris's 5/23/07 Dep. at 60-61, Ticor's App. Ex. 2.)

City Title does not assert either that it did not receive the escrow funds or that it

returned the same.  City Title does maintain that Ticor is not entitled to summary

judgment because National and Harris, not City Title, are to blame for transferring the

funds, and the amount of Ticor's damages, if any, is in dispute.  Even assuming that

City Title's claims are true, they do nothing to undercut a finding of unjust enrichment.

First, that Harris, and not City Title, transferred the funds to City Title's account is of no

---

[13]When asked what Fuciarelli said in response to Harris's request for a return of
the escrow funds, Harris responded, [h]e said if he had it he would give it to me."
(Harris's 5/23/07 Dep. at 61, Ticor's App. Ex. 2.)

consequence in the unjust enrichment analysis. The party being enriched need not have acted improperly in order for there to be a finding of unjust enrichment. *Franklin Bank N.A. v. Zero Plus Advantage*, No. 212712, 2001 WL 682228, at *3 (Mich. Ct. App. April 20, 2001)[14] ("Michigan law does not require a showing of knowledge or improper conduct to find that a party was unjustly enriched"). Unjust enrichment may result from a failure to make restitution where it is equitable to do so; such is the case when a person has passively received a benefit which it would be unconscionable for him to retain without paying for it. *Id.*

Regarding how the issue of damages impacts a finding of unjust enrichment, even if the extent of Ticor's damages is in dispute, the facts necessary to establish a claim of unjust enrichment are not in dispute. City Title received $275,000 in escrow funds that did not belong to it. City Title used all but $5,424.82 of the $275,000 to pay its debts and obligations. (Aff. of Krzesenski, Nat'l and Harris's Mot. to Dismiss, Ex. C.) The rest of the funds remained in City Title's account. To date, City Title has not returned the funds despite numerous alleged requests by Harris that it return the funds. On these undisputed facts, a finding of unjust enrichment is readily made.

Lastly, City Title claims that Ticor is not entitled to summary judgment because City Title, as a whole, did not receive a benefit, only the City Title Clinton Township branch, with which Harris was involved, received a benefit. (City Title's Resp. to Ticor's Mot. at 3-6.) City Title points out that Harris and Fuciarelli operated their own branch of

---

[14]Although *Franklin Bank* is unpublished and thus not precedentially binding, this court is entitled to conclude that the reasoning of an unpublished decision is persuasive. *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 593 (6th Cir. 2004). This court finds the reasoning of *Franklin Bank* to be persuasive and applicable to the instant case.

City Title in Clinton Township and that they kept all revenue from that branch in an account separate from the accounts of City Title Agency, Inc., the main entity. (*Id.*) City Title's argument is unavailing. First, it is far from clear that a benefit bestowed upon one branch of a larger entity - even if the branch maintains one or more "accounts" separate from the larger entity - does not benefit the larger entity, of which the branch is an integral part. Second, even assuming that the benefit received by the Clinton Township branch was not directly realized by other branches, this fact alone does not necessitate a finding that a claim for unjust enrichment cannot be pursued against the principal entity, City Title Agency, Inc. City Title has not presented, nor has this court found, law supporting City Title's proposition that a claim of unjust enrichment must fail under these circumstances.

The uncontroverted facts establish that the elements of unjust enrichment are met. City Title received a benefit from Ticor, as the funds transferred to City Title's account belonged to Ticor and/or National's policyholders, and (2) an inequity has resulted to Ticor because City Title has retained the funds and has thereby caused Ticor to suffer damages by way of third-party claims and attorneys' fees. On these facts, no rational jury could conclude that City Title did not receive a benefit from Ticor, or that an inequity would not result to Ticor if City Title were permitted to retain the benefit. Accordingly, the court finds that there is no genuine issue of material fact that City Title has been unjustly enriched by Ticor.

### B.  National and Harris's "Motion to Dismiss Counts IV and VI" of Ticor's Complaint and/or for "Partial Summary Judgment"

Count IV of Ticor's complaint alleges that National and Harris committed larceny,

in violation of Michigan Penal Code § 750.356,[15] and count VI alleges that National and Harris committed embezzlement,[16] in violation of Michigan Penal Code § 750.174. (Ticor's Compl. at 8, 10.)  National and Harris assert that Ticor's allegations of penal code violations should be dismissed because a private right of action does not arise

---

[15]Mich Comp. Laws § 750.356 provides, in pertinent part:

(1) A person who commits larceny by stealing any of the following property of another person is guilty of a crime as provided in this section:

(a) Money, goods, or chattels

. . . .

(2) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $15,000.00 or 3 times the value of the property stolen, whichever is greater, or both imprisonment and a fine:

(a) The property stolen has a value of $20,000.00 or more.

[16]Mich. Comp. Laws § 750.174 provides, in relevant part:

(1) A person who as the agent, servant, or employee of another person, governmental entity within this state, or other legal entity or who as the trustee, bailee, or custodian of the property of another person, governmental entity within this state, or other legal entity fraudulently disposes of or converts to his or her own use, or takes or secretes with the intent to convert to his or her own use without the consent of his or her principal, any money or other personal property of his or her principal that has come to that person's possession or that is under his or her charge or control by virtue of his or her being an agent, servant, employee, trustee, bailee, or custodian, is guilty of embezzlement.

. . . .

(7) If the money or personal property embezzled has a value of $100,000.00 or more, the person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $50,000.00 or 3 times the value of the money or property embezzled, whichever is greater, or both imprisonment and a fine.

under a criminal statute. (*See generally* Nat'l and Harris's Mot. to Dismiss.) National and Harris also argue that, in light of Harris's mistaken belief that the funds at issue belonged to City Title, Ticor cannot prove the fraudulent intent element required to maintain a larceny or embezzlement claim. (*Id.* at 12-15.) Ticor counters that there is no bright-line rule precluding it from pursuing its claims of larceny and embezzlement. (*See generally* Ticor's Resp.) It further argues that its claims should not be extinguished at the summary judgment stage because intent is a question of fact for the jury, and circumstantial evidence can prove intent. (Ticor's Resp. at 11-14.)

"[T]he general rule is that a private cause of action is not maintainable under a criminal statute." *Am. Postal Workers Union v. Indep. Postal Sys. of Am.,* 481 F.2d 90, 93 (6th Cir. 1973). "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." *Id.* (quoting *Bass Angler Sportsman's Soc. of Am. v. U.S. Steel*, 324 F. Supp. 412, 415 (S.D. Ala. 1971)). *See also Diamond v. Charles,* 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of criminal law); *Zolman v. IRS,* 87 F.Supp. 2d 763 (W.D. Mich. 1993) (stating that a criminal statute prohibiting acts of fraud and extortion by IRS agents creates no private cause of action); *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (holding that, in the context of mail and wire fraud criminal statutes, violations of the criminal code do not give rise to private causes of action).

Although the court recognizes that a court may, in certain circumstances, infer a private cause of action, where there is a bare criminal statute, with no indication that civil enforcement is available, a private cause of action will not be inferred. *See Marx v.*

21

*Centran Corp.*, 747 F.2d 1536, 1549 (6th Cir. 1984); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone.").  Here, the statutes for larceny and embezzlement are bare criminal statutes containing no indication that a private right of action is available.[17]  The court is not persuaded that Ticor should be permitted to pursue its claims for larceny and embezzlement, as such claims allege violation of purely criminal statutes.  Accordingly, the court will grant National and Harris's motion for partial summary judgment on Ticor's claims of larceny

---

[17]The statutes speak of violators being guilty of misdemeanors or felonies and punishments of imprisonment and/or a fine "that is not a civil fine."  *See* Mich. Comp. Laws §§ 761.1, 750.174 and 750.356.

and embezzlement.[18]

## C. National and Harris's "Motion for Summary Judgment
of Unjust Enrichment Claim against City Title"

In their cross-complaint against City Title, National and Harris assert, among

other allegations, one count of unjust enrichment.  (Nat'l and Harris's Cross-Compl. at

3.)  As indicated above, in order to sustain a claim of unjust enrichment, a plaintiff must

---

[18]In light of the court's resolution on this matter, it need not consider National and Harris's additional argument that it is entitled to summary judgment on Ticor's claims of larceny and embezzlement because Ticor cannot prove the requisite *mens rea* element of larceny and embezzlement.

Furthermore, a similar result occurs even if the court were to engage in a liberal reading of Ticor's complaint and find that Ticor has pled, albeit inartfully so, the tort of common law conversion and/or statutory conversion.  In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.  *AFSCME Intl. Union, et al. v. Bank One, et al.*, 705 N.W.2d 355, 364 n.6 (Mich. Ct. App. 2005).  However, an action for conversion of money can be maintained only if there was an obligation on the defendant's part to return the specific money entrusted to it.  *Id.*  In other words, where the defendant is obligated to return an amount of money equal to the amount of money that he took, as opposed to the specific, identifiable money that he took, an action for conversion will not lie.  *Id.*  (holding that defendant union officers who unlawfully transferred money from the union's bank account "had no obligation to return any specific cache of money").  *See also Echelon Homes, L.L.C. v. Carter Lumber Company*, 683 N.W.2d 171, 179-80 (2004), *rev'd in part on other grounds*, No. 267233, 2006 WL 1867716 (Mich. Ct. App. July 6, 2006) (holding that, where the defendant-employee embezzled bank funds from the plaintiff-employer, a claim for common law conversion could not be sustained because the plaintiff was not entitled to the specific or identical money embezzled, but rather to an amount of money equal to the amount embezzled).

Statutory conversion, by contrast, consists of knowingly "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property."  *Head v. Phillips Camper Sales & Rental, Inc.,* 593 N.W.2d 595, 603 (Mich. Ct. App. 1999) (quoting Mich. Comp. Laws § 600.2919a).  However, statutory conversion is "not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property."  *Marshall Lasser, PC v. George*, 651 N.W.2d 158, 162-63 (Mich. Ct. App. 2002).  Because Harris, working as an agent of National, is the one who improperly transferred the money, Ticor may not assert a claim for statutory conversion against National or Harris.

establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Barber,* 509 N.W.2d at 796.

Harris maintains that he transferred funds from National's escrow account into City Title's under the mistaken belief that the funds belonged to City Title, and that City Title has been unjustly enriched by the funds, having used them to pay its debts and refusing to return them despite National's requests. (*Id.*) City Title counters that the unjust enrichment claim fails for various reasons, including, National and Harris have alleged the existence of a contract in their cross-complaint, National and Harris are responsible for the transfer of funds and City Title did not benefit from the funds as the funds went to only one discrete branch of City Title. (*See generally* City Title's Resp.)

First, City Title's claim that National and Harris allege the existence of an express contract between National and City Title is unsubstantiated. A review of National and Harris's cross-complaint reveals no such allegation; at no point does National or Harris, whether in their cross-complaint or elsewhere, allege the existence of an express contract with City Title. The only references to a contract in the cross-complaint involve a reference to the contract between Ticor and National and a reference to City Title having breached an "implied contract" allegedly in existence between National and City Title, i.e., City Title has been unjustly enriched by the transfer of escrow funds. (Nat'l and Harris's Cross-Compl. at 2-3.) In fact, Count I of National and Harris's cross-

complaint is titled "Breach of Implied Contract (Unjust Enrichment)." (*Id.* at 3.)

Therefore, City Title's allegation fails as it lacks a basis in fact.[19]

City Title's other claims - that it was not unjustly enriched because National and Harris, not it, are to blame for the transfer of funds, and City Title did not benefit from the funds because the funds went to one discrete branch of City Title - also lack merit. These arguments have already been analyzed by the court in the previous unjust enrichment analysis and, as explained above, do nothing to undercut a finding that City Title was unjustly enriched. (*See supra,* § A.iii.)

City Title undeniably received a benefit from National and Harris in the form of $275,000 of National's escrow funds, which National and Harris were entrusted to safeguard and manage, and (2) an inequity has resulted to National and Harris because City Title has retained funds that National and Harris were contractually obligated to safeguard. Although the funds ultimately belong to Ticor and/or National's policyholders, inequity has befallen National and Harris in that, pursuant to the agency contract between Ticor and National, the funds were in National's guardianship when they were improperly transferred, and National and Harris are liable to Ticor for the

---

[19]Insofar as City Title's argument is based upon the claim that the transfer of escrow funds was a "loan" from National to City Title, which formed a contractual relationship between National and City Title, that argument, too, is unfounded. Forget testified that, in her bookkeeping, she temporarily labeled the two checks at issue as "loans," only as a way of reminding herself that she needed to return to the records and clarify that two checks were deposited into City Title's account. (Forget's Dep. at 80, Ticor's App. Ex. 5.) Because she was in a hurry, she did not have time to record the true nature of the transaction. (*Id.*) When asked whether there was ever an actual "loan" between National and City, her unequivocal testimony is that there was never any such loan. (*Id.*) There is no evidence to suggest otherwise. Thus, the court rejects any claim that the transfer of funds was a loan from National to City Title or that there was an express contract between National and City Title.

funds entrusted to them. City Title cannot, and does not, dispute the facts that it received the funds to which it had no lawful claim, that it used the funds to pay its debts and obligations and that it has not returned the funds. Accordingly, there is no genuine issue of material fact preventing the conclusion that City Title has been unjustly enriched by National and Harris.

### D. National and Harris's "Motion to Dismiss and/or for Summary Judgment of City Title's Cross-Complaint"

City Title filed a cross-complaint against National and Harris, asserting (1) indemnity, (2) negligence, (3) fraudulent misrepresentation and (4) breach of fiduciary duty. (*See generally* City Title's Cross-Compl.)

### 1. Indemnity

National and Harris argue that City Title is not entitled to indemnity because it is actively liable and has unclean hands, thus precluding a finding of indemnity. (Nat'l and Harris's Mot. to Dismiss at 9-11.) City Title maintains that it is entitled to indemnity because it was Harris, not City Title, who transferred the funds, and City Title should not be liable for the wrongful acts of another. (City Title's Resp. at 6-8.)

"Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*, 854 F.Supp. 1294, 1300 (E.D. Mich. 1994) (quoting *Hill v. Sullivan Equip. Co.*, 273 N.W.2d 527, 529 (Mich. Ct. App. 1978). Under Michigan law, a claim for indemnity may arise from three sources: the common law, an implied contract and an express contract. *Fishbach-Natkin,* 854 F.Supp. at 1300. An indemnity claim under either common law or

26

a theory of implied contract may be enforced only where liability arises vicariously or by operation of law from the wrongful acts of the party from whom indemnity is sought. *Id.* Only a party who can plead and prove freedom from active fault is entitled to be indemnified under a common law or implied contract theory. *Id.* at 1301. In applying this principle, Michigan courts have repeatedly held that, in determining whether a party seeking common law or implied contract indemnity is itself free from active negligence, a court must review the underlying complaint against that party. *Id.* Where the underlying complaint alleges that the party who now seeks indemnity is liable by virtue of its own active negligence, as opposed to being derivatively liable, that party has no common law or implied contract right to be indemnified. *Id.*

As it is clear that there was no express contract between National and City Title, if indemnity arises at all, it arises from an implied contract or the common law, thus triggering the requirement that City Title prove that it was not actively negligent.[20] City Title's indemnity claim fails because City Title cannot establish freedom from active negligence, as alleged by the underlying complaint. Ticor's complaint alleges against City Title counts of larceny by conversion (Count V), unjust enrichment (Count VII) and negligence (Count VIII). (*See generally* Ticor's Compl. and First Am. Compl.) More

---

[20]A claim for indemnity under an implied contract theory exists only where there is "a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification." *Fishbach-Natkin,* 854 F.Supp. at 1300. It is not clear whether City Title is alleging that its claim for indemnity stems from the common law, an implied contract or both. The court's resolution of the indemnity issue, however, is the same whether the indemnity claim arises from the common law, an implied contract or both because the analysis in each scenario centers upon whether City Title can prove that it is free from active negligence.

specifically, Ticor asserts that City Title knew that the funds at issue did not belong to City Title and that City Title knew or should have known that the funds were misappropriated by Harris.  (Ticor's First Am. Compl. at 8-10.)  Ticor further alleges that City Title fraudulently converted the funds to its own use, that it has been unjustly enriched by retaining the misappropriated funds and that it has breached its duties to act in good faith and with due care.  (*Id.*)  Ticor's claims go beyond allegations of mere derivative liability.  Ticor is not asserting merely that the funds were inadvertently transferred to City Title's account, unbeknownst to City Title, followed by City Title immediately returning the funds after discovering that it did not have a lawful claim to them.  To the contrary, Ticor asserts, and the uncontroverted material evidence supports, that City Title was actively negligent in various respects, all of which go above and beyond mere derivative liability.  There is no genuine issue of material fact that City Title is not entitled to indemnity.

## 2.  Negligence and Breach of Fiduciary Duty

Further, with respect to City Title's claims against National and Harris of negligence and breach of fiduciary duty, the court finds that summary judgment in favor of National and Harris is not appropriate.  Although the court cannot conclude that City Title's evidence is such to guarantee it a victory on the ultimate disposition of its claims, the court does find that City Title presents sufficient evidence to survive a motion for summary judgment.  That National and City Title were in various respects intimately associated is abundantly clear.  Such a relationship could support a finding of a fiduciary duty owed by each to the other.  Further, the evidence is sufficient to make a colorable claim that Harris did not use due diligence in determining whether the funds

28

actually belonged to City Title before or within a reasonable time after transferring them, and such could conceivably constitute both negligence and a breach of National's fiduciary duty. Thus, National and Harris's motion for summary judgment on City Title's negligence and breach of fiduciary duty claims fails.

### 3. Fraudulent Misrepresentation

Finally, National and Harris assert that they are entitled to summary judgment on City Title's claim of fraudulent misrepresentation because City Title allegedly does not present sufficient evidence on the *mens rea* element.[21] The element of intent is a question of fact for the jury, and the element can be proven by circumstantial evidence. *Echelon Homes, L.L.C.*, 683 N.W.2d at 183. Although the court cannot conclude from the available evidence that Harris *must* have harbored a culpable state of mind when transferring the funds, the court is easily persuaded that a rational jury could so find, based upon circumstantial evidence. Factors that, taken together, could conceivably constitute circumstantial evidence of the requisite intent element include (1) Harris's intimate association with City Title, (2) Harris's inability to explain why he was concerned with, and took measures to remedy, a shortage in City Title's account, (3) Forget's initial testimony that she did not tell Harris during their initial phone call that funds were mistakenly deposited into National's account, (4) Harris's failure to exercise due diligence in verifying, before the transfer or within a reasonable time after, whether

---

[21]The elements of fraudulent misrepresentation are (1) a material, false representation, (2) the defendant's knowledge of its falsity, (3) the defendant's intent that the plaintiff rely upon the misrepresentation, (4) the plaintiff's reliance and (5) injury to the plaintiff. *Sneyd, et al. v. Intl. Paper Co., Inc.,* 142 F.Supp.2d 819, 823 (E.D. Mich. 2001).

the funds actually belonged to City Title and (5) Harris's failure to report the missing escrow funds to Ticor until approximately ten weeks after the transfer.[22]  In sum, sufficient circumstantial evidence exists to create a question of fact regarding whether Harris possessed the necessary intent to support a finding of fraudulent misrepresentation.  Accordingly, National and Harris's motion for summary judgment on City Title's fraudulent misrepresentation claim fails.

### IV.  CONCLUSION

IT IS ORDERED that Ticor's "Motion for Partial Summary Judgment" [Dkt. # 61] is GRANTED.  Ticor is DIRECTED to submit an itemized damages calculation,[23] along with detailed supporting documentation on or before **September 25, 2007.**  National and Abstract may file objections, if any, on or before **October 2, 2007.**

IT IS FURTHER ORDERED that National and Harris's "Motion to Dismiss Counts IV and VI" of Ticor's Complaint and/or for "Partial Summary Judgment" [Dkt. # 62] is GRANTED.

IT IS FURTHER ORDERED that National and Harris's "Motion for Summary Judgment of Unjust Enrichment Claim" [Dkt. # 64] is GRANTED.

IT IS FURTHER ORDERED that National and Harris's "Motion to Dismiss and/or for Summary Judgment" of City Title's Cross-Complaint [Dkt. # 63] is GRANTED IN

---

[22]That Fuciarelli testified that he is unaware of any false representations made to him by Harris  (Fuciarelli's Dep. at 82, Nat'l and Harris's Mot. to Dismiss Counts IV and VI of Ticor's Compl, Ex. B.) is not dispositive on the issue, but rather is one factor to consider.

[23]The damages at issue are those that stem from National's breach of contract and Harris's breach of the personal guarantee, and include reasonable attorneys' fees and costs.

PART and DENIED IN PART.  Specifically, it is GRANTED as to City Title's claim of

indemnity, and DENIED as to City Title's claims of negligence, breach of fiduciary duty

and fraudulent misrepresentation.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 13, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 13, 2007, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522